UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE NINO,<br><br>Plaintiff,<br><br>v.<br><br>J. MUNOZ, et al.,<br><br>Defendants. | Case No. 1:20-cv-01722-ADA-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANT SULLIVAN'S MOTION TO DISMISS**<br><br>(Doc. 38)<br><br>**14-DAY OBJECTION PERIOD** |

## I. INTRODUCTION

On June 15, 2022, Plaintiff Joe Nino, appearing through counsel, filed a third amended complaint, brought pursuant to 42 U.S.C. § 1983. (Doc. 33.)

On August 22, 2022, following service of the third amended complaint, Defendants Carrillo, Escarcega, Harris, Masferrer and Munoz filed an answer to the complaint. (Doc. 39.)

Also on August 22, 2022, Defendant W. J. Sullivan filed a motion to dismiss. (Doc. 38.) Plaintiff filed his opposition on September 12, 2022 (Doc. 41), and on September 26, 2022, Sullivan filed his reply (Doc. 42).

On October 6, 2022, the Court issued its Order of Reassignment, reassigning this matter to the undersigned as magistrate judge. (Doc. 43.)

//

## II. LEGAL STANDARDS

***Motions to Dismiss***

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) if there is a lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)), cert. denied, 132 S.Ct. 1762 (2012). In resolving a 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

"If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Id*. at 1216-17 (emphasis in original) (quoting *Iqbal*, 556 U.S. at 681). "Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Id*. at 1217 (quoting *Twombly*, 550

U.S. at 556) (emphasis added in *Starr*).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

***Section 1983 Actions***

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To state a cognizable claim for a Section 1983 violation, a plaintiff must allege (1) the deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). A person deprives another of a constitutional right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Under Section 1983, a plaintiff must allege that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The facts alleged must be sufficient for the Court to conclude that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. *Iqbal*, 556 U.S. at 676. Liability may not be imposed on supervisory personnel under Section 1983 based on the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. *Id.*; *Ewing v. City of*

*Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

To state a claim for relief under Section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations & internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks & alterations omitted).

A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim—and, more specifically, on the state of mind required by the particular claim—not on a generally applicable concept of supervisory liability. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).

## III. PLAINTIFF'S OPERATIVE COMPLAINT

Plaintiff filed a third amended complaint on June 15, 2022. (Doc. 33.) Relevant to this motion, Plaintiff named W J. Sullivan, Warden at the California Correctional Institution, as a Defendant. (*Id*. at 3.)

### ***The Factual Allegations***

Plaintiff contends that on December 31, 2018, at about 3 p.m., Defendants Harris and Masferrer approached Plaintiff's cell and motioned the tower to open the cell door. (Doc. 33 at 4-5.) Plaintiff ran to the toilet and flushed some contraband. (*Id*. at 5.) Defendants Harris and Masferrer screamed for Plaintiff to turn around and get on the ground. (*Id.*) Plaintiff immediately "turned around away from them as he put his hands behind his back and handcuffs were placed

on [his] wrists." (*Id.*) Plaintiff was pulled backwards and out of the cell before Harris and Masferrer pushed Plaintiff to the ground in front of the cell. (*Id.*) Harris and Masferrer were yelling, "'what did you flush motherfucker?!'" and Plaintiff responded, "'kites, I flushed kites.'" (*Id.*) Either Harris or Masferrer angrily responded with "'don't fuckin' lie to me you little punk!'" (*Id.*)

Plaintiff contends he felt the weight of a knee on his mid back "as the other officer placed another knee in Plaintiff's right thigh." (Doc. 33 at 5.) Plaintiff's body and clothing were searched. (*Id.*) When the pressure of the officers' knees subsided, Plaintiff felt his pants and boxers being pulled down. (*Id.*) He then felt pepper spray as Harris and Masferrer "sprayed him on his back as he was lying face down on the ground." (*Id.*) He heard the officers laughing and coughing. (*Id.*) Plaintiff "felt the direct hit of pepper spray on his buttocks and genitals and then felt one of the officer with his hand and finger spread Plaintiff's buttocks as if conducting a search and Plaintiff then felt the officer's fingers penetrate his rectum." (*Id.* at 6.) Plaintiff "jolted and jumped" in response. (*Id.*) The same officer then said, "fuck you" and both officers then placed their knees on Plaintiff's back until others arrived. (*Id.*)

As he was being escorted from the building, Plaintiff contends "multiple Correctional Officers, F. Harris, V. Masferrer, and an unknown officers" pushed him against the rotunda wall and repeatedly punched him with closed fists on his back and ribs. (Doc. 33 at 6.) Plaintiff asserts "[t]he sergeant was laughing along with the correctional officers before finally stating, "'that's it, take him to the front.'" (*Id.*) As two officers pulled Plaintiff to his feet, Harris kicked Plaintiff in the genitals from behind. (*Id.*) Plaintiff asserts he suffered physical pain, shame, humiliation, degradation, embarrassment, emotional and mental distress, and other injuries, as a result. (*Id.*)

On July 29, 2019, at about 9:00 a.m., Plaintiff was on the exercise yard for Facility 4B. (Doc. 33 at 7.) About a half an hour later, Defendants Munoz and Carrillo approached and ordered Plaintiff to turn around and place his hands behind his back. (*Id.*) Plaintiff was advised he was to be escorted to the 4B holding cage located in the facility's clinic. (*Id.*) Plaintiff complied by turning around and placing his hands behind his back. (*Id.*) Munoz applied handcuffs and Carrillo applied leg irons. (*Id.*) Carrillo "grabbed Plaintiff's right triceps with his left arm" and

Munoz did the same with Plaintiff's left triceps as they escorted Plaintiff through the building's rotunda. (*Id*.) Upon reaching the "'A' section door," but before exiting, Munoz placed his right leg in front of Plaintiff's left leg, intentionally tripping him. (*Id*.) Carrillo and Munoz "simultaneously picked Plaintiff up by his arms and slammed [him] headfirst onto the concrete floor." (*Id*.) In disbelief and nearly losing consciousness, Plaintiff contends he felt repeated punches to the left side of his face and head as Munoz continued to strike him. (*Id*.) Carrillo was doing the same on the right side of Plaintiff's head and face. (*Id*. at 7-8.) Plaintiff blurted out, "'stop – please leave me alone!'" (*Id*. at 8.) Munoz placed his hand around Plaintiff's neck and said, "'you know what this is for motherfucker, you want to write me and my partners up, the ball is in your court now.'" (*Id*.) Plaintiff contends the "beating continued and went on for approximately four to five minutes, as Plaintiff yelled in pain asking them to please stop." (*Id*.) When Carrillo and Munoz stopped, Munoz stood "and gave Plaintiff a hard kick to his lower back as he stated, 'SNITCH.'" (*Id*.)

Afterwards, Plaintiff contends "there was blood everywhere," including "a pool of blood on the ground." (Doc. 33 at 8.) Plaintiff's face was bloody and "split open." (*Id*.) Plaintiff heard Carrillo say, "'oh shit, the nurses and ISU is coming, we need to cover his face!'" (*Id*.) Carrillo and Munoz then placed a blue spit mask over Plaintiff's face. (*Id*.) Munoz told Carrillo, "'we will say that he kicked you and tried to spit, okay?'" (*Id*.) Carrillo responded, "'cool.'" (*Id*.) Plaintiff was picked up and escorted to the "4B facility medical clinic, where medical staff and ISU Officer Adame logged the incident and took photos of the injuries." (*Id*.)

Following evaluation, Plaintiff contends facility medical staff decided to send him to Dignity Health Mercy Hospital Emergency Room as his injuries required a higher level of care. (Doc. 33 at 8-9.) In the emergency room, Plaintiff was assessed, and tests were conducted. (*Id*. at 9.) He sustained a one-inch laceration above his left eyebrow requiring six sutures. (*Id*.) A CT scan of his head and spine was conducted and showed "Plaintiff also suffered a brain injury and a concussion." (*Id*.)

At about 1:45 p.m. on July 29, 2019, Plaintiff was discharged from the hospital and returned to the facility. (*Id*.) He arrived at about 4:00 p.m. with a severe headache caused by the

injuries to his face and head inflicted by Carrillo and Munoz. (*Id*.) At about 4:30 p.m., Plaintiff was placed in a holding cell in the Receiving and Release area. (*Id*.) Munoz approached and said, "'you better drop the write up motherfucker!'" (*Id*.) When Plaintiff responded by saying, "'what write up are you talking about?" Munoz replied, "'you know what write up, the write up on New Year's.'" (*Id*.) When Plaintiff told Munoz he did not know what Munoz was talking about, Munoz then said, "'on Friday we sent you back your complaint for the excessive force and P.R.E.A. allegations against Harris, if you know what's better for you, then you better drop it.'" (*Id.* at 9-10.) Plaintiff avers that at that point, he told Munoz that he had not received the complaint "back from the appeals coordinator" but that he was not going to drop it. (*Id*. at 10.) Munoz angrily responded by stating, "'No matter where you go on level four prisons, we will get to you, I promise you we are going to give you a good ass whooping.'" (*Id*.) Thereafter, Plaintiff was transferred to Kern Valley State Prison (KVSP). (*Id*.)

Plaintiff contends that at KVSP his left eye and eyesight worsened, and he started to lose his eyesight. (Doc. 33 at 10.) It became blurry and sensitive to light. (*Id*.) "KVSP ordered an urgent visit to the ophthalmologist due to the severe injury to Plaintiff's eye." (*Id*.) On August 12, 2019, Plaintiff was transported to a Modesto eye surgery center where he was seen by Gregory C. Teslok, M.D. (*Id*.) Plaintiff was diagnosed with "'Subclinical Iritis,' which is the direct result of blunt force trauma to the left eye" sustained in the July 29, 2019 incident. (*Id*.) Plaintiff contends the vision in his left eye changed from 20/20 to 20/40 in five months' time. (*Id*.) Plaintiff continues to suffer from pain in his left eye, making everyday activities difficult. (*Id*.) As a result of this injury, Plaintiff requires prescription glasses. (*Id*. at 10-11.)

***The Claims Asserted***

Plaintiff asserts the following claims: (1) excessive force against Defendants Harris, Masferrer, Munoz, Carrillo, Escarcega, Sergeant John Doe and Doe Defendants in violation of the Fourth and Eighth Amendments; (2) retaliation against Defendant Munoz, Carrillo and Sergeant John Doe in violation of the First Amendment; and (3) cruel and unusual punishment for a failure to adequately train, failure to supervise, and failure to investigate against Defendant W. J. Sullivan in violation of the Eighth Amendment. (Doc. 33 at 11-19.)

## IV. THE PARTIES' POSITIONS ON THE MOTION

***Defendant Sullivan's Motion to Dismiss***

Defendant alleges Plaintiff's third cause of action, asserting Sullivan is subject to supervisory liability for failing to train and failing to supervise his subordinates, fails to state an Eighth Amendment claim. (Doc. 38-1 at 4.) Citing to *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018), Defendant contends Plaintiff has made only conclusory allegations that Sullivan promulgated "unidentified 'policies, practices and customs,'" and thus the allegations are insufficient to state a claim. (*Id*. at 4-5.) Further, Defendant avers Plaintiff's assertion that Sullivan failed to train and supervise staff "fails to plead any facts at all regarding that training and supervision." (*Id*. at 5.) This too, Defendant contends, is insufficient to state a claim. (*Id*.) Defendant argues that "Plaintiff apparently hangs his hat on the allegation that Sullivan 'was aware of widespread beatings and use of force in CCI Tehachapi,' and 'condoned, encouraged, fostered and/or ratified the unlawful conduct' of the other Defendants." (*Id*.) Defendant argues "these are simply conclusory assertions without any facts attached to them." (*Id*.) As to "the 'acquiescence in the constitutional deprivation' portion of the supervisory liability standard set forth in *Keates* and *Starr*," Defendant contends Plaintiff's allegations are conclusory recitations of the elements of his claim. (*Id*.) He contends the "court need not, and should not credit such conclusory allegations." (*Id*.)

Further, Defendant argues Plaintiff's allegations "do not connect Sullivan's conduct to Plaintiff's alleged harm" because Plaintiff fails to allege any action or failure to act by Sullivan causing either incident alleged by Plaintiff. (Doc. 38-1 at 5.) Defendant contends "Plaintiff offers only speculation that Sullivan knew of supposedly 'widespread beatings,' but fails to state when this occurred in relation to the incidents at issue, or what was deficient about Sullivan's response." (*Id*. at 5-6.) Because those allegations do not inform Sullivan about what he purportedly did wrong, Defendant contends they are insufficient as a matter of law. (*Id*. at 6.) Defendant argues Plaintiff has failed to state an Eighth Amendment violation against Sullivan and therefore the claim should be dismissed. (*Id*.)

Finally, Defendant contends he is entitled to qualified immunity. (Doc. 38-1 at 6-8.)

Specifically, Defendant asserts it was not clearly established in 2018 and 2019 that Sullivan's awareness of "'widespread beatings' at an unspecified time … in an unspecified way" ratified the purportedly unconstitutional conduct of his subordinates. (*Id*. at 7.) Rather, Defendant argues "the opposite was true." (*Id*.) Defendant avers "[s]peculative, conclusory assertions that a supervisor somehow 'authorized the particular conduct' of subordinates are not sufficient to show a constitutional violation by the supervisor." (*Id*. at 7-8.) Defendant concludes that because case law does not clearly establish "that every reasonable person would have known that Sullivan's alleged conduct was unconstitutional, Sullivan is entitled to qualified immunity." (*Id*. at 8.)

***Plaintiff's Opposition***

In opposition to Defendant Sullivan's motion to dismiss, Plaintiff contends his allegations are sufficiently pled. (Doc. 41 at 5.) Specifically, Plaintiff alleges the third amended complaint's assertion "that SULLIVAN 'was aware of widespread beatings and use of excessive force in CCI Tehachapi'" and that the "widespread beatings were common and 'common knowledge' at CCI is a fact, widely known in and outside of CDCR" and makes the allegation "neither boilerplate nor conclusory." (*Id*. at 7.) Plaintiff argues the law does not require "each assault against inmates by each of the many correctional officers that were stationed at CCI prior to July 29, 2019 be completely documented" and that, at the pleading stage, the law requires "well-pleaded allegations – and the inferences to be drawn from them – are plain and cognizable." (*Id*.) Thus, Plaintiff contends his allegations "are sufficient to pass the pleadings stage." (*Id*.) Plaintiff argues he has sufficiently alleged that Sullivan demonstrated deliberate indifference to Plaintiff's safety because he has demonstrated the required causal connection that Sullivan set in motion a series of acts by knowingly refusing to terminate a series of acts by others that Sullivan knew or reasonably should have known would cause others to inflict constitutional injury. (*Id*. at 7-8.) Plaintiff contends Defendant's assertion that the third amended complaint is speculative as to Sullivan's knowledge of the widespread beatings "is specious." (*Id*. at 8.) Plaintiff avers "[e]very single attack by a CCI correctional officer upon a housed inmate is supposed to be reported and documented in the facility's files" and that he has "properly alleged that part of SULLIVAN'S duties as CCI's warden was to oversee and be aware of such reports, including the respective 602

administrative complaints brought by CCI inmates against these C.O.'s, of which there were many at CCI prior to July 29, 2019." (*Id.*) Plaintiff argues he is "only required to demonstrate a causal connection that SULLIVAN 'reasonably should have known (reporting of the December 18, 2018 attack on [Plaintiff] by F. Harris and V. Masferrer) would cause others (i.e., J. Munoz and B. Carrillo) to inflict a constitutional injury of the alleged attack on Plaintiff, or that they were involved in it.'" (*Id.*) Plaintiff states that he has not pled Sullivan had "'advance knowledge'" of the later July 29, 2019 assault by Munoz and Carrillo and condoned by Escarcega; he states "[t]hat is what discovery is for" and that Sullivan can be held culpable without advance knowledge. (*Id.*) Plaintiff concludes he has met his pleading burden "by identifying with sufficient particularity SULLIVAN'S awareness and knowledge" of the attacks on December 31, 2018 and that "it would be reasonably foreseeable that" Plaintiff would be brutally beaten again. (*Id.* at 9.)

Next, Plaintiff argues Sullivan is not entitled to qualified immunity. (Doc. 41 at 9-10.) Specifically, Plaintiff contends that Sullivan's argument is misguided, and largely relies upon authorities involving summary judgment proceedings or following jury trial, and thus involved discovery rather than dismissal at the pleading stage, making "these non-analogous cases" "illogical, improper and prejudicial" to Plaintiff. (*Id.* at 9.) Plaintiff argues he has sufficiently alleged "deliberate indifference, or callous and reckless indifference" by Sullivan, involving detailed allegations that must be taken as true for purposes of this motion, and that Sullivan has been properly put on notice regarding those claims. (*Id.* at 10.) Plaintiff concludes that in the event the Court find his allegations are insufficient to state a claim, he should be given leave to amend to correct any deficiency. (*Id.*)

***Defendant's Reply***

In reply to Plaintiff's opposition, Defendant Sullivan contends Plaintiff has asserted only conclusory allegations regarding policies or training, making those allegations insufficient. (Doc. 42 at 2.) Defendant specifically references paragraphs 70 and 71 of Plaintiff's third amended complaint, arguing those allegations are legal conclusions and thus are insufficient to state a claim. (*Id.* at 2-3.) As concerns Plaintiff's allegation that Sullivan was aware of widespread

beatings at CCI, Defendant argues "the allegation is conclusory in that it does not include any facts as to the supposed widespread beatings, when they started, when they happened, how Sullivan knew about them, or how Sullivan responded to this information." (*Id*. at 3.) Defendant contends the allegation is "without any factual support." (*Id*.) Defendant contends "the allegation is a legal conclusion (namely that Sullivan had knowledge) couched as a factual allegation, because it says nothing about what Sullivan's conduct was, but only makes assertions about the legal elements of a claim." (*Id*.)

Defendant asserts this Court "recently addressed an analogous issue" in *Peyton v. Cates*, No. 1:22-cv-00151-JLT-EPG (PC), 2022 WL 1430752, at *4 (E.D. Cal. May 5, 2022), adopted at 2022 WL 2307789 (June 27, 2022), where the complaint at issue generally alleged a supervisor knew of the threat posed by COVID-19 but implemented deficient policies regarding the response to COVID-19. (Doc. 42 at 3.) In *Peyton*, Defendant avers those allegations were found to be "insufficient because they 'fail[ed] to specify any COVID policy that was deficient, what policy should have been implemented, and how the failure to follow a policy led to a constitutional violation.'" (*Id*.) Defendant argues Plaintiff's similar assertion that Sullivan purportedly knew of "'widespread beatings'" "does not state when Sullivan knew, how he responded, what the response should have been, and crucially does not state how that response led to" a violation of Plaintiff's rights. (*Id*.) In the absence of that information, Defendant maintains Plaintiff fails to state a claim. (*Id*. at 3-4.)

Defendant states Plaintiff's attempt to rescue his claims by asserting that Sullivan "would have learned about uses of force against inmates from reports filed by officers and grievances by inmates," does not assist him because "those supposed 'facts' were not pled" in Plaintiff's third amended complaint. (Doc. 42 at 4.) Because those facts were not pled in the complaint, Defendant contends this Court cannot consider them. (*Id*.) Next, Defendant argues that even if Plaintiff did plead that Sullivan learned of excessive force use through reports and grievances, Plaintiff would "still not state a claim, because there still would be no allegation as to Sullivan's conduct, and no allegation as to how that conduct led" to Plaintiff' harm. (*Id*.) Plaintiff's assertion that Defendant Sullivan acquiesced in the conduct of his subordinates is only a legal conclusion

without factual support. (*Id.*) Defendant contends he is entitled to dismissal. Further, Defendant argues that "because even with the additional facts [he] proposes to plead," Plaintiff would still be unable to state a claim leave to amend would be futile. (*Id.*)

Finally, Defendant argues qualified immunity can be appropriately determined in a motion to dismiss, despite Plaintiff's argument to the contrary. (Doc. 42 at 4-5.) Defendant avers that "accepting any non-conclusory factual allegations as true, the TAC shows on its face that qualified immunity applies" and therefore there is no reason to delay a ruling. (*Id.* at 5.) Also, Defendant argues Plaintiff's opposition does not argue that it was clearly established that Defendant's alleged conduct was unconstitutional, "effectively conceding that it was not." (*Id.*) Further, Defendant contends "it is difficult to imagine a case establishing that an unspecified failure to act in response to unspecified reports of excessive force is unconstitutional" because the "right at issue must be framed specifically with reference to the particular allegations of the claim." (*Id.*) Sullivan argues that because Plaintiff has not asserted "any particular conduct" by him, Plaintiff cannot meet his burden of demonstrating the alleged conduct was clearly established as unconstitutional. (*Id.*) Thus, qualified immunity bars Plaintiff's claim against Defendant. (*Id.*)

## V. DISCUSSION

To begin, the undersigned quotes that portion of the third amended complaint pertaining to the specific claim against Defendant Sullivan:

> THIRD CAUSE OF ACTION
>
> (42 U.S.C. § 1983, 8th Amendment to U.S. Constitution)
>
> (Against Warden W.J. Sullivan)
>
> 67. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 66, above, and incorporates each allegation stated as though fully set forth in full herein.
>
> 68. Defendant Warden W.J. Sullivan violated Plaintiff's right to be free from cruel and unusual punishment guaranteed to him by the Eight[h] Amendment to the United States Constitution by his failure to adequately train custody staff in the appropriate use of force and criminal activity; and by his failure to supervise the other Defendants and by his failure to investigate the incident or discipline the other

defendants.

69. Plaintiff's claims against Defendant Sullivan are based on his maintaining and permitting the practices, policies and customs under CDCR guidelines and procedures for correctional facilities. In addition, Defendant Sullivan was responsible for the supervision, training and hiring of persons and employees working within CCI Tehachapi including correctional officers, medical staff, mental health staff and other employees within the CCI facility. In particular, Plaintiff is informed and believes and based thereon alleges that Defendant Sullivan, as the official policy maker for CCI Tehachapi, was aware of widespread beatings and use of excessive force in CCI Tehachapi. On information and belief, instead of taking proper steps to discipline Individual Defendants and named Doe Defendants, Defendant Sullivan condoned, encouraged, fostered and/or ratified the unlawful conduct of said Defendants. Plaintiff is further informed and believes and thereon alleges that Defendant Sullivan ratified the Individual Defendants and Doe Defendants' unconstitutional conduct towards Plaintiff. Defendant Sullivan is sued in both his individual/personal and official capacities for his own culpable action or inaction in the training, supervision or control of his subordinates, or for his acquiescence in the constitutional deprivations which this amended Complaint alleges, or for the conduct that showed a reckless or callous indifference to the rights of others.

70. Defendant Sullivan acted under color of state law, and he knew or should have known that his conduct, attitude and actions created an unreasonable risk of serious harm to Plaintiff. Despite this knowledge, Defendant Sullivan failed to take reasonable steps to protect Plaintiff and to ensure his constitutional right to be free from cruel and unusual punishment while he was in Defendants' care and custody at Tehachapi.

71. The actions and conduct of Defendant Sullivan demonstrate deliberate indifference to Plaintiff's well-being and constitutes violations of Plaintiff's Eight[h] Amendment rights under the United States Constitution.

72. As a proximate result of the Defendants' failure to ensure Plaintiff's right to be free from cruel and unusual punishment while incarcerated at Tehachapi, Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm.

73. As a direct and foreseeable result of the Defendants' violations of Plaintiff's Eight[h] Amendment rights, Plaintiff has suffered, is suffering and will continue to suffer physical injuries in the form of damage to his left eye, loss of eyesight, headaches, problems with balance, and other injuries.

74. As a direct and foreseeable result of the Defendants' violations of Plaintiff's Eighth Amendment rights, Plaintiff has suffered, is suffering and will continue to suffer injuries in the form of pain and suffering, shame, humiliation, degradation, emotional distress, embarrassment, mental distress and other injuries.

(Doc. 33 at 17-19.)

***Plaintiff's Third Amended Complaint fails to state a claim against Sullivan***

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established ... by setting in motion a series of acts by others, ... or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207-08 (internal quotation marks & citation omitted). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

Because the third amended complaint does not assert that Defendant Sullivan was personally involved in the constitutional violation at issue, Plaintiff must allege a sufficient causal connection between Sullivan's wrongful conduct and the constitutional violation.

***Policies, Practices and Customs***

Plaintiff alleges his claims against Sullivan "are based on his maintaining and permitting the practices, policies and customs under CDCR guidelines and procedures for policy makers." The third amended complaint's allegations regarding Defendant Sullivan are conclusory and are not supported by sufficient factual detail. Plaintiff does not allege any facts concerning the "policies, practices and customs" he asserts Defendant promulgated. He does not identify any specific policy, nor does he point to a document stating such a policy existed. Plaintiff does not allege Defendant Sullivan said or did anything that leads to Plaintiff's conclusion that Sullivan had adopted such a policy, practice or custom. Nor does Plaintiff allege how Sullivan was responsible for or otherwise involved in the policies or practices or customs Plaintiff claims are at

issue. It is not enough to merely allege Sullivan had a general supervisory role, as the facility's warden, and that because of that role, he is responsible for the constitutional deprivation suffered by Plaintiff. These types of general allegations that rely upon claims of the general responsibility of the warden for prison operations are insufficient to establish Section 1983 liability. *E.g., Samaniego v. Cal. Dep't of Corr. and Rehab.*, No. 1:21-cv-0839 JLT BAK (EPG), 2022 WL 2194588, at *10 (E.D. Cal. June 17, 2022) (dismissing § 1983 claims against warden based on similar allegations of his maintenance of unspecified institutional guidelines and permitting practices and policies).

Plaintiff asserts Sullivan knew or should have known Plaintiff would suffer a constitutional deprivation because Sullivan would have access to and/or reviews grievances or 602s submitted by inmates at CCI. However, Plaintiff has alleged no facts demonstrating Sullivan read Plaintiff's grievance or how Plaintiff is aware that Sullivan read his grievance. Plaintiff merely argues in his opposition that as warden Sullivan was aware because he reviews inmate grievances. The undersigned finds it is unreasonable to infer that Sullivan read Plaintiff's grievance without more. There is insufficient factual detail to draw a reasonable conclusion that Sullivan knew or should have known from the fact that inmates file grievances that Plaintiff was at risk of harm. *Iqbal*, 556 U.S. at 678. *See also, e.g.*, *Simmons v. Galipeau*, No. 3:22-CV-783-JD-MGG, 2022 WL 4355760, *3 (N.D. Ind. Sept. 19, 2022) (finding that the warden's "undefined role in processing grievances is not a basis for personal liability").

***Supervision, Training and Hiring***

Plaintiff's third amended complaint alleges Sullivan "was responsible for supervision, training and hiring of persons and employees working with the CCI facility." Plaintiff's allegation is vague and conclusory. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Plaintiff makes no effort to specifically identify how Sullivan's "supervision, training and hiring" were constitutionally deficient, other than his broad assertion that, as warden, Sullivan was responsible. That simply is not enough. Plaintiff does not allege specific facts concerning the purportedly deficient supervision, training or hiring. These conclusory statements are insufficient to link Sullivan to a constitutional violation. *Iqbal*, 556 U.S. at 678. *Cf., e.g.*, *Rood v. Cal. Dep't of*

*Corr.*, No. 1:19-cv-01517-JLT-HBK (PC), 2021 WL 6052169, at *6 (E.D. Cal. Dec. 21, 2021) (declining to dismiss failure-to-train claim against warden where plaintiff's specific allegations concerning specific training were "closely related" to plaintiff's injury), adopted at 2022 WL 17418440 (E.D. Cal. May 16, 2022); *see also Bryant v. Salem County*, No. 18-837 (RMB-KMW), 2019 WL 2588804, at *9 (D.N.J. June 24, 2019) ("Plaintiff has not identified a specific policy that caused the constitutional deprivation alleged, nor has he alleged a specific training program that was deficient in such a manner as to cause the constitutional violation at issue. Merely citing 'excessive force' as the policy or training deficiency is insufficient to state a § 1983 municipal liability claim").

***Widespread Beatings and Use of Excessive Force***

In an effort to allege Sullivan's knowledge of conditions sufficient to maintain a § 1983 claim, Plaintiff relies on assertions of "widespread beating and use of force in CCI Tehachapi."

In *Starr v. Baca*, the Ninth Circuit determined a plaintiff stated a cognizable claim against a supervisor where he alleged that the sheriff knew of — and was specifically given official notice of — culpable uses of force by subordinates prior to the alleged use of excessive force against the plaintiff and took no preventative action. *See Starr*, 652 F.3d at 1208-1209. The Court observed there were "many allegations in the complaint detailing what Sheriff Baca knew or should have known, and what Sheriff Baca did or failed to do." *Id*. at 1209. Starr alleged Baca signed a Memorandum of Understanding in 1999, which required him "to address and correct the continuous constitutional violations to which inmates were being subjected." *Id*. Starr also detailed numerous instances of injuries to other named inmates that occurred after Baca signed the Memorandum of Understanding. *Id.* at 1209-1212. The Court noted Baca also received notice of all incidents, and Starr alleged "Baca did not take action to protect inmates under his care despite the dangers, created by the actions of his subordinates, of which he had been made aware." *Id*. at 1216. The Court concluded the allegations "plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr." *Id*. at 1216. Thus, the Court concluded Starr "sufficiently alleged under Rule 8(a) a supervisory liability claim of deliberate indifference against Sheriff

Baca." *Id*. at 1217.

In contrast, a general allegation that a supervisor knew of "systemic excessive force" by officers fails to support a claim. In an action filed in the Central District of California, the district court determined a plaintiff failed to state a claim against three associate wardens when the plaintiff asserted they "knew of the 'systemic acts of excessive force on inmates' by the Green Wall prison officials and condoned them." *Windham v. Franklin*, No. CV 13-3004-SVW (JEM), 2014 WL 7740262, at *14 (C.D. Cal. Aug. 29, 2014). That court explained that the plaintiff's "allegations that [the associate wardens] knew that prison officials used excessive force against inmates are too conclusory to constitute a basis for holding them personally liable for the force used against" the plaintiff. *Id*.

Here, Plaintiff alleges that Defendant Sullivan knew of "widespread beatings and use of excessive force" at CCI and that Sullivan was aware of it "as the official policy maker for CCI." However, the allegations in the third amended complaint are conclusory. Plaintiff does not specifically identify what incidents or retaliatory behavior by correctional officers support the legal conclusion that Defendant Sullivan knew of "widespread beatings and use of excessive force" at CCI and "condoned, encouraged, fostered and/or ratified" the conduct. Without such allegations, Plaintiff fails to support his claim against Sullivan. *E.g.*, *Samaniego*, 2022 WL 2194588, at *11.

***Acquiescence***

The Ninth Circuit has "held that 'acquiescence or culpable indifference' may suffice to show that a supervisor 'personally played a role in the alleged constitutional violations.'" *Starr*, 652 F.3d at 1208. There, the Ninth Circuit held that "Starr's complaint makes detailed factual allegations that go well beyond reciting elements of a claim of deliberate indifference. These allegations are neither 'bald' nor 'conclusory,' and hence are entitled to the presumption of truth" and the "factual allegations in Starr's complaint plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr. There is no 'obvious alternative explanation,' within the meaning of *Iqbal*, for why Sheriff Baca took no action to stop his subordinates' repeated violations of prisoners'

constitutional rights despite being repeatedly confronted with those violations, such that the alternative explanation requires us to conclude that Starr's explanation 'is not a plausible conclusion.'" *Id.* at 1216.

Here, unlike *Starr*, Plaintiff's lack of specificity makes his allegation that Sullivan acquiesced in Plaintiff's constitutional deprivations insufficient. The undersigned agrees with Defendant that the allegation is conclusory and is merely a recitation of elements of the claim. *Id.* (a complaint may not simply recite the elements of a cause of action).

***Causal Connection***

Plaintiff's contentions against Sullivan are insufficient to plausibly show a "sufficient causal connection" between his conduct and the constitutional violations. *See Starr*, 652 F.3d at 1207. As discussed above, Plaintiff has not provided sufficient factual allegations to support a claim that Sullivan directly or indirectly caused the alleged constitutional violations.

***Summary of Findings***

In sum, Plaintiff has failed to allege sufficient facts to state a claim for supervisory liability against Defendant Sullivan. The undersigned will recommend Sullivan's motion to dismiss be granted on this basis. Although the Court extended to Plaintiff two earlier opportunities during the screening process to cure deficiencies in his pleadings against Defendant Sullivan (*see* Docs. 9, 25), Plaintiff still may be able to cure the deficiencies in his third amended complaint, and accordingly, the undersigned will recommend Plaintiff be afforded one final opportunity to amend his complaint concerning his cause of action asserted against Defendant Sullivan, assuming he can do so in good faith. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000).[1]

## VI. CONCLUSION AND RECOMMENDATIONS

For the reasons given above, this Court RECOMMENDS Defendant Sullivan's motion to dismiss be GRANTED in PART and DENIED in PART. Further, the undersigned

---

[1] Because the undersigned finds Plaintiff has failed to state a claim against Defendant Sullivan and recommends Plaintiff be granted leave to amend his complaint, the undersigned declines to address the matter of qualified immunity. Separately, the remaining Defendants—Carrillo, Escarcega, Harris, Masferrer and Munoz—have filed an answer to Plaintiff's third amended complaint. *See* Doc. 39.

RECOMMENDS that Plaintiff be granted leave to file a fourth amended complaint to cure the deficiencies identified herein regarding his claim against Defendant Sullivan.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 21, 2023**

UNITED STATES MAGISTRATE JUDGE